IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LORENZO JOHNSON,

                              Plaintiff,                    OPINION AND ORDER

         v.                                                 13-cv-114-wmc

LT. WIENSLO, LT. SABISH, LT. SCHENERDER,
SGT. BORAH, C.O. 2 LUNDHA, C.O. 2 GILLS,
MR. GREFF, and C.O. 2 BEAHM,

                              Defendants.

---

Plaintiff Lorenzo Johnson alleges that the above-named correctional officers and others employed by the Wisconsin Department of Corrections at Waupun Correctional Institution violated his Eighth Amendment rights by placing him in a feces-filled cell for three days.  Before the court is plaintiff Johnson's motion for summary judgment, in which he contends that there are no genuine issues of material fact and that judgment in his favor is warranted as a matter of law.  (Dkt. #18.)  For the reasons described below, the record here is not so one-sided as to rule out a jury finding in favor of defendants. Accordingly, the court will deny Johnson's motion.

Also before the court is plaintiff's motion for assistance in recruiting of pro bono counsel.  (Dkt. #48.)  For the reasons described below, the court will grant that motion and stay all pretrial filings and the trial date pending recruitment of counsel for plaintiff.[1]

---

[1] This decision moots defendants' recently-filed motion to stay case deadlines and trial date.  (Dkt. #53.)

UNDISPUTED FACTS[2]

**A.  The Parties**

Plaintiff Lorenzo Johnson is an inmate who was incarcerated at Waupun Correctional Institution for all times relevant to this action.

Defendants Jason Wenzel, Cory Sabish and Jessie Schneider are Supervising Officers 1 (Lieutenants) at Waupan, and each was employed in that capacity for all times material to Johnson's complaint.  Defendants Jeffrey Gill, Joseph Beahm and Michael Lunde are Correctional Officers at Waupan, and each was employed in that capacity for all times material to Johnson's complaint.  Finally, defendant Brian Greff is a Corrections Program Supervisor at Waupan, and he too was employed in that capacity for all times material to Johnson's complaint.

**B.  Events Leading Up to August 23, 2012**

Plaintiff contends that inmate Terrence Shipp was placed in cell A-103 on August 23, 2012.  This contention is generally consistent with Shipp's affidavit signed on September 11, 2012, though Shipp represents that it was cell A-104.  (Affidavit of Terrence L. Shipp ("Shipp Aff.") (dkt. #23).)  Defendants do not dispute Shipp's placement, but contend that he was housed in cell A-103 beginning on August 20, 2012.

---

[2] Unless otherwise noted, the court finds the following facts material and undisputed. The court notes that defendants curiously filed a reply in support of their proposed findings of facts.  (Dkt. #43.)  As the non-movant, such a reply is not contemplated by the briefing schedule on the motion or by the court's procedure to be followed on motions for summary judgment (*see* Prelim. Pretrial Conf. Order (dkt. #14) pp. 24-25), nor did defendants seek leave for such a filing.  As such, the court has not considered defendants' reply in setting forth the undisputed facts.

Notwithstanding any inconsistency in the cell number and timing, there is no dispute, however, that Shipp was housed in a cell immediately before Johnson was placed in that same cell.

After being placed in the cell, Shipp avers that he noticed there were feces in the cracks of the window and all over the door, including the food trap. (*Id.*) Shipp further avers that he informed the correctional officers of this, but they refused to move him. (*Id.*) In response, Shipp plugged his toilet so that he would be moved to a different cell. (*Id.*)

Defendants acknowledge that Shipp was moved to a different cell at approximately 3:00 a.m. on August 23, 2012. Defendant Wenzel claims not to recall why Shipp was moved. At the same time, Wenzel represents that, to his knowledge, it was not because of complaints that the cell was dirty. (Declaration of Jason Wenzel ("Wenzel Decl.") (dkt. #28) ¶ 5.)

### C. Condition of Cell

When an inmate is moved from a cell, the cell is cleaned before any other inmate is placed in the cell as a matter of policy. Cells are usually cleaned by an inmate worker, typically referred to as a "swamper." The procedures used by the swampers are based on the condition of the cell. Typically, the cell is cleaned by use of disinfectant sprays and scrub brushes. If an area requires additional measures, then a hose with a spray nozzle is used. After the cell is cleaned, unit staff inspects the cell. If the staff finds the cell is not sufficiently cleaned, staff will direct that the cell be cleaned again.

Johnson does not dispute that this is the policy, but submits an affidavit from Eugene D. Hart, an inmate who purportedly cleaned cell A-103 on August 23, 2012. (Affidavit of Eugene D. Hart ("Hart Aff.") (dkt. #22).)  Hart avers that because "the cell was covered with [f]eces," he "requested to use the high pressure sprayer/hose to clean the cell, but was instructed to use the normal cleaning equipment."  (*Id.* at ¶ 5.)  Hart then did so as "best [he] could."  (*Id.*)  Hart further avers that after overhearing an inmate was being moved to that cell -- and later learning the inmate was plaintiff Johnson -- he told defendant Beahm that "the cell probably still had feces in it because I could only use the regular cleaning supplies, and there [were] some areas I could not reach or clean properly."  (*Id.* at ¶ 6.)  In response, Hart avers that Beahm ignored him and walked away.  (*Id.*)

### D. Johnson's Placement in Cell

On August 23, 2012, Dr. Endres placed Johnson on observation status and directed that he only be allowed a mat, a smock and a blanket for property.  Defendant Beahm and another correctional officers Burns placed Johnson in cell A-103.  While Johnson essentially concedes that Beahm did *not* make the final decision as to which particular cell Johnson would be placed, he nevertheless contends that Beahm advised an unidentified supervisor that Johnson wanted to be placed in the "poop cell."  (Pl.'s Resp. to Defs.' PFOFs (dkt. #43) 6; Pl.'s PFOFs (dkt. #20) ¶ 16; *see also* Declaration of Antonio Taborn (dkt. #42) (averring that he heard Beahm say to Johnson "you wanted to be put in the cell with poop").)  Beahm disputes this.

Johnson contends that soon after he was placed in the cell, he smelled feces and noticed it on the window, food trap and walls.  Johnson further avers that during defendants' rounds, which were conducted every 15 minutes while he was held in the cell, he told defendants Lunde, Gills, Beahm, Sabish, and Wenzel that his cell had feces and asked to be moved to a different cell.  (Pl.'s PFOFs (dkt. #20) ¶¶ 10-12.)

The next day, August 24, 2012, Johnson also submitted a psychological services request ("PSR") form complaining that he is housed in a cell with feces in it.  (Compl., Ex. C (dkt. #1-1) p.3.)  Defendants contend that there is no evidence that any of the defendants saw this PSR.  Also on August 24, 2012, Johnson submitted an interview request form to defendant Brian Greff, indicating that his cell had feces in it and requesting to be moved to a different cell.  (Compl., Ex. D (dkt. #1-1) p.4.)

In contrast, Greff maintains that he did not receive Johnson's request until after Johnson was released from cell A-103.  Moreover, Greff responded to that request on September 6, 2012, that "[t]he cells are cleaned and logged.  Plus you can clean you cell weekly."  (*Id.*)

Every defendant avers individually that from August 23 to August 26, 2012, he was not aware of Johnson's complaint about his cell, nor did any of the defendants smell or otherwise observe feces at any points.  (Defs.' PFOFs (dkt. #43) ¶¶ 55, 56.)   Instead, defendants direct the court to an observation log in which they detail Johnson's activities approximately every 15 minutes, highlighting observations that have nothing to do with complaints about the feces in his cell.  (*Id.* at ¶ 43 (citing Wenzel Decl., Ex. 105 (dkt. #28-4).)

For his part, Johnson also points to some arguably corroborating evidence from the observation log, including a note from August 23rd at 2:02 p.m., requesting "supplies," that Johnson now contends was a request for cleaning supplies; an August 24th entry at 7:02 a.m., indicating that Johnson "inquires about a new cell;" and another note that same day at 8:15 p.m. by Dehel, indicating that Johnson is "standing by door and said room smells."  (Pl.'s Resp. to Defs.' PFOFs (dkt. #43) ¶¶ 36, 40, 43 (citing Wenzel Decl., Ex. 4 (dkt. #28-4)).)

Johnson was removed from observation status and from cell A-103 on August 26, 2012, at approximately 8:00 p.m.

OPINION

The outcome of plaintiff's motion for summary judgment turns principally on the proper standard of review.  "Where, as here, the movant is seeking summary judgment on a claim as to which [he] bears the burden of proof, [he] must lay out the elements of the claim, cite the facts which [he] believes satisfies these elements, and demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*, 778 F.3d 593, 601 (7th Cir. 2015).

As explained in the order granting Johnson leave to proceed on an Eighth Amendment conditions of confinement claim, Johnson must prove both the objective and subjective component of such a claim, a burden that Johnson appears not to appreciate fully. *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994).  The objective

analysis focuses on whether prison conditions were sufficiently serious so that "a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities," *Farmer*, 511 U.S. 825, 834 (1994), or "exceeded contemporary bounds of decency of a mature, civilized society." *Lunsford*, 17 F.3d at 1579. The subjective component requires an allegation that prison officials acted wantonly and with deliberate indifference to a risk of serious harm to plaintiff. *Farmer*, 511 U.S. at 838-39.

As described above, there are issues of fact at least as to whether (1) the cell was covered in feces; and (2) any defendant was aware of the fact that the cell was covered in feces. While plaintiff has put forth evidence in support of both of these findings, a fact defendants essentially concede by not moving for summary judgment themselves, the affidavits provided by the parties on summary judgment conflict. As a result, a jury will need to assess the credibility of Johnson, of the other inmates who have provided supporting statements *and* of the defendants, along with other evidence at trial, in order to resolve these conflicts. In other words, based on material disputes of fact on both issues, the court cannot conclude that a reasonable jury could not rule in favor of defendants.

Also before the court is plaintiff's motion for assistance in recruiting counsel. (Dkt. #48.) Plaintiff contends that (1) he cannot afford counsel; and (2) the issues in this case are complex and exceed his mental capacity. (*Id.* at ¶¶ 1-2.) Plaintiff further attests that he has attempted to recruit his own counsel from various attorneys, attaching three letters from attorneys rejecting his requests as proof. (*Id.* at ¶ 3; *id.*, Ex. C (dkt. #48-3).) Plaintiff also attached materials demonstrating his mental capacity limitations.

(*Id.*, Ex. A (dkt. #48-1) (psychological services report dated January 25, 2010, describing results of various intelligence tests, which indicate that Johnson fell in the "low average" or "well below average" range and that he reads at the third-grade level).)

While Johnson's lack of financial resources does not provide an adequate basis for recruiting counsel, the court agrees that the upcoming trial "exceeds [his] capacity as a layperson to coherently present [his claims] to the judge or jury himself." *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007). To date, Johnson has managed to articulate his claim and marshal considerable evidence in support of it, although it appears he has done so with the benefit of a "jailhouse lawyer." (Pl.'s Mot. (dkt. #48) ¶ 2; *see also id.*, Ex. B (dkt. #48-3) (seeking assistance from jailhouse lawyer Jerry Meeks in his deposition scheduled for April 10, 2015).) In light of Johnson's documented limitations, the court agrees that he would be materially limited at trial in testifying without the assistance of counsel, eliciting direct testimony from others in his case-in-chief, and perhaps most importantly, cross-examining defendants. Accordingly, the court will grant Johnson's motion and recruit counsel for him for the sole purpose of representing him at trial.

Because this case is set for trial to proceed on June 1, 2015, and because the court anticipates some delay in the recruitment of and preparations by counsel, the court will strike all remaining pre-trial deadlines, as well as the trial date, pending recruitment of plaintiff's counsel.

ORDER

IT IS ORDERED that:

1) plaintiff Lorenzo Johnson's motion for summary judgment (dkt. #18) is DENIED;

2) plaintiff's motion for assistance in recruiting of counsel (dkt. #48) is GRANTED;

3) all pre-trial deadlines and the trial date are STRUCK pending recruitment of pro bono counsel for plaintiff; and

4) defendants' motion to stay case deadlines and trial date (dkt. #53) is DENIED AS MOOT.

Entered this 29th day of April, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge